M NELSON SEGEL, CHARTERED
M NELSON SEGEL, ESQUIRE
Nevada State Bar No. 0530
624 South 9th Street
Las Vegas, Nevada  89101
Tel:  (702) 385-5266
Fax:  (702) 382-2967
nelson@nelsonsegellaw.com

[Proposed] Local Counsel

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, | Case No.: 2:09-CV-1558-RCJ-LRL |
| Plaintiff, | |
| v. | CLASS ACTION |
| MGM MIRAGE, J. TERRENCE LANNI, JAMES J. MURREN, DANIEL J. D'ARRIGO, and ROBERT H. BALDWIN, | |
| Defendants. | |
| KHACHATUR HOVHANNISYAN, Individually and On Behalf of All Others Similarly Situated, | Case No.: 2:09-CV-02011-LRH-RJJ |
| Plaintiff, | |
| v. | CLASS ACTION |
| MGM MIRAGE, J. TERRENCE LANNI, JAMES J. MURREN, DANIEL J. D'ARRIGO, and ROBERT H. BALDWIN, | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE DEKALB COUNTY PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

Presently pending in this District are at least two related securities class actions lawsuits (the "Related Actions")[1] that have been brought against MGM Mirage ("MGM" or the "Company") and four of its officers and/or directors (collectively "Defendants") on behalf of purchasers of MGM common stock between August 2, 2007 and March 5, 2009, inclusive, (the "Class Period"). Both actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. The first action was commenced in this jurisdiction on August 19, 2009. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on August 19, 2009, the first notice that a class action had been initiated against Defendants was published over a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as lead plaintiff within 60 days (by October 19, 2009). *See* Declaration of James M. Wilson, Jr. ("Wilson Decl.") at Ex. B. DeKalb County Pension Fund ("DeKalb" or "Movant") is a class member (*see* Wilson Decl. at Ex. A) and is timely filing this motion within the 60 day period following publication of the August 19, 2009 notice pursuant to Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

DeKalb has suffered losses totaling approximately $1,486,893 on a first-in first-out basis ("FIFO") and on a last-in first-out basis ("LIFO") as a result of its investment in MGM common stock.[2] Accordingly, DeKalb is believed to have suffered the largest and most significant

---

[1] The Related Actions are *Lowinger v. MGM Mirage, et al.* 09-CV-1559-RCJ-LRL and *Hovhannisyan v. MGM Mirage et al.,* 09-CV-2011-LRH-RJJ. Movants are filing identical lead plaintiff papers in both of the above-captioned cases.

[2] The losses suffered by Movant are not necessarily the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the

financial loss of any movant and, as such, has the largest financial interest in the outcome of this litigation. *See* Wilson Decl. at Ex. A. In addition, Movant has submitted a sworn certification demonstrating its desire to serve as Lead Plaintiff. *See* Wilson Decl. at Ex. A. Movant also satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and thus is presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff.

As the most adequate plaintiff as defined by the PSLRA, DeKalb respectfully submits this memorandum of points and authorities in support of its motion, pursuant to § 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating the Related Actions pursuant to Fed. R. Civ. P. 42(a); (2) appointing Movant to serve as Lead Plaintiff, pursuant to the Exchange Act, of a proposed class of persons or entities including those who purchased or otherwise acquired MGM common stock during the Class Period; and (3) approving its selection of Chitwood Harley Harnes LLP ("Chitwood Harley Harnes") as Lead Counsel, and M Nelson Segel, Chartered ("M Nelson Segel") as its Local Counsel.

## STATEMENT OF FACTS[3]

Defendant MGM is a Las Vegas-based company that develops, owns, and operates hotels and casinos and is the second-largest gaming company in the world. MGM functions largely as a holding company, with its operations conducted primarily through its wholly-owned

---

certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

[3] These facts were derived from the allegations contained in the Class Action Complaints on file and other publicly-available information.

subsidiaries.  MGM's CityCenter construction project is the Company's biggest development

project to date.[4]  Dubai World, an investment holding company, agreed to inject nearly $3 billion

in capital into the CityCenter project in return for a 50% ownership interest through its

subsidiary, Infinity World Development Corp.

The Class Period begins on August 2, 2007, when MGM disclosed record financial

results and issued positive comments about construction of the CityCenter project.  MGM

mislead the market throughout the Class Period regarding the strength of the Company's

financial condition and the construction status and schedule of CityCenter.  Defendants misled

the market that MGM, a capital intensive business, had a robust and sound capital strategy due to

strong cash flow and significant debt capacity under credit facilities.  Additionally, Defendants

misled the market to believe that because of MGM's "financial flexibility," it was nearly

immune to the credit crises that was impacting other businesses.   Moreover, defendants assured

the market, despite increasing development costs, that CityCenter construction was progressing

smoothly and the project would still be completed on schedule.

On January 7, 2009, the truth began to emerge, and MGM's stock price started its

decline, when MGM revealed significant changes to the scope of the CityCenter project relating

to the Harmon Hotel & Spa.  These changes included postponing the opening of the hotel to late

2010 and canceling the planned construction of over 200 condominium units, known as the

Harmon condominium project.  It was later disclosed that MGM had known about significant

---

[4]  CityCenter is a 16,797,000 sq ft mixed-use urban complex, featuring a 4,000-room hotel
and casino, two 400-room boutique hotels (The Residences at Mandarin Oriental, with 227
residential condo units, and the Harmon Hotel and Spa), a purely residential offering, a condo-
hotel, and a 500,000 sq ft retail and entertainment district.

construction defects as far back as July 2008.  In fact, in late 2008, work on the Harmon

Hotel/Condo Tower was stopped after county inspectors discovered improper installation of

critical steel reinforcements (rebar) after 15 stories of the building had already been erected.

This led to the cancellation of county permits and approval for construction for the top 21 stories

because of structural concerns.  The top 21 stories were to have housed Harmon condominium

units.  On January 9, 2009, the Company disclosed that it would be recognizing a non-cash

impairment charge of approximately $1.2 billion resulting from factors such as higher discount

rates from turmoil in the credit and equity markets.  The massive drop in the stock price

continued when, on February 27, 2009, the Company revealed that it was seeking to borrow

$842 million, the remaining unused borrowing capacity available under its $7 billion senior

credit facility.  MGM explained its increased cash need was due in part to the continuing

instability in the capital markets.  Then, on March 3, 2009, MGM announced that it had delayed

filing its Annual Report due to severe liquidity and other financial problems.  The Company also

acknowledged that it could default under its senior credit facility.  MGM common stock lost over

80% of its value as a result of the corrective disclosures beginning on January 7, 2009.

## <u>ARGUMENT</u>

## I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR EFFICIENCY

Consolidation pursuant to Rule 42(a) of the Federal Rules of Civil Procedure is proper

when actions involve common questions of law and fact.  *See Aronson v. McKesson HBOC, Inc.*,

79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416

F. Supp. 161, 175 (C.D. Cal. 1976).  This Court has broad discretion under Rule 42 to

consolidate cases pending within this district.  *See Investors Research Co. v. United States*

*District Court*, 877 F.2d 777 (9th Cir. 1989); *Perez-Funez v. District Dir., Immigration &*

*Naturalization Serv.*, 611 F. Supp. 990, 994 (C. D. Cal. 1984) ("A Court has broad discretion in deciding whether or not to grant a motion for consolidation, although, typically, consolidation is favored.") (citations omitted).

Courts have recognized that class action shareholder suits, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because consolidation of many actions involving the same parties and issues expedites pretrial and discovery proceedings, reduces duplication, and minimizes the costs and time expended by all persons involved. *See Equity*, 416 F. Supp. at 176. Consolidation further reduces delay or prejudice that may result from prosecuting the Related Actions separately. Consolidation of the Related Actions thus is appropriate as common questions of law and fact predominate in the actions. *See* Fed. R. Civ. P. 42(a).

Both of the Related Actions assert essentially the same claims brought on behalf of a class of persons and/or entities who purchased MGM common stock in reliance on Defendants' materially false and misleading statements and/or omissions during the Class Period. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Newman v. Eagle Build. Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

DeKalb respectfully submits that the requirements for consolidation are met here and that the Related Actions should be consolidated.

## II.   DEKALB SHOULD BE APPOINTED LEAD PLAINTIFF

Movant should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead

Plaintiff, Movant's selection of Chitwood Harley Harnes to serve as Lead Counsel, pursuant to

15 U.S.C. § 78u-4(a)(3)(A)(i), should be approved by the Court.

### A.        The Procedural Requirements Of The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee

securities class actions brought pursuant to the Federal Rules of Civil Procedure.  15 U.S.C.

§78u-4(a)(3).  First, the plaintiff who files the initial action must, within 20 days of filing the

complaint, publish a notice informing Class members of their right to seek appointment as lead

plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Within 60 days after publication of the required notice,

any member or members of the proposed class may apply to the Court to be appointed as lead

plaintiff, whether or not they have previously filed a complaint in this action.  15 U.S.C. § 78u-

4(a)(3)(A) & (B).  Plaintiff in this action published a notice on *Business Wire* on August 19,

2009.  *See* Wilson Decl. at Ex. B.[5]  This notice indicated that applications for appointment as

lead plaintiff were to be made no later than 60 days from August 19, 2009 (by October 19,

2009).

Next, within 90 days after publication of the initial notice of pendency, the Court shall

appoint as lead plaintiff the movant that the Court determines to be most capable of adequately

representing the interests of class members.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining who

is the "most adequate plaintiff," the Exchange Act provides that:

---

[5]  Business Wire is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service."  *See In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 567 (D. Md. 2001); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *1 (N.D. Ill. Aug. 6, 1997).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that
>
>> (aa)  has either filed the complaint or made a motion in response to a notice . . .
>>
>> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii); *Stocke v. Shuffle Master, Inc.*, No. 2:07-CV-00715-KJD-RJJ, 2007 WL 4262723, at * 1-2 (D. Nev. Nov. 30, 2007); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

### B.      DeKalb Is "The Most Adequate Plaintiff"

#### 1.      DeKalb Has Made A Motion For Appointment As Lead Plaintiff.

The time period in which class members may move to be appointed as Lead Plaintiff in this case expires on October 19, 2009.  Movant's application, filed on October 19, 2009, thus is timely.  Movant has reviewed the complaint and is willing to serve as the representative party on behalf of the Class.  *See* Wilson Decl. at Ex. A.  In addition, DeKalb has selected and retained competent counsel to represent it and the Class as Lead Counsel.  *See* Wilson Decl. at Ex. C. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and its selection of Chitwood Harley Harnes as Lead Counsel approved by the Court.

#### 2.      DeKalb Has The Largest Financial Interest.

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the Class member who represents the largest financial interest in the relief sought by the action and who is otherwise qualified.  *Stocke*, 2007 WL 4262723, at * 2; *see also In re Cavanaugh*, 306

F.3d at 730.  To its knowledge, DeKalb has sustained more losses than any other movant.  *See* Wilson Decl. at Ex. A.  Furthermore, this loss is even more significant given the size of the fund. *See In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1031 (N.D. Cal. 1999) ("An argument could be made that an investor who lost a large share of his or her net worth has a larger financial interest, percentage-wise, than an investor with larger absolute dollars lost but for whom the loss is only a small fraction of its overall portfolio."); *see also Borenstein v. Finova Group Inc.*, Nos. Civ. 00-619PHXSMM, Civ. 00-926PHXPGR, Civ. 00-978PHXSMM, Civ. 00-1010PHXEHC, Civ. 00-1100PHXROS, 2000 WL 34524743, at *7 (D. Ariz. Aug. 30, 2000). For these reasons, DeKalb has the largest known financial interest in the relief sought by the Class.

**3.    DeKalb Otherwise Satisfies Rule 23.**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to be appointed lead plaintiff, the Court should limit its inquiry to the

typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining

requirements until the lead plaintiff moves for class certification. *Richardson v. TVIA, Inc.*, No.

C 06 06304-RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing *In re Cavanaugh*,

306 F.3d at 730); *Lax*, 1997 WL 461036, at *6. Movant satisfies both the typicality and

adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a.    DeKalb Fulfills the Typicality Requirement.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical

of those of the class. Generally, the test of typicality "is whether other members have the same

or similar injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct."

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (omitting internal citations);

*see also Stocke*, 2007 WL 4262723, at * 2. The requirement that the proposed class

representative's claims be typical of the claims of the class does not mean, however, that the

claims must be identical. *Stocke*, 2007 WL 4262723, at * 2 (citing *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1020 (9th Cir. 1998)). Typicality does not require that there be no factual

differences between the class representatives and the class members because the generalized

nature of the claims asserted determines whether the class representative is typical. *See Priest v.

Zayre Corp.*, 118 F.R.D. 552, 55 (D. Mass. 1988) ("With respect to typicality under Rule

23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent

class members, but need only show that their claims arise from the same course of conduct that

gave rise to the claims of the absent [class] members.") (citations omitted). Because Movant

seeks to prove that Defendants "committed the same unlawful acts in the same methods against

an entire class . . . all members of this class have identical claims, and therefore, the typicality

requirement of Rule 23(a)(3) is satisfied." *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Movant DeKalb seeks to represent a class of purchasers of MGM common stock which have identical, non-competing, and non-conflicting interests. DeKalb satisfies the typicality requirement because, just like all other Class members, it: (1) purchased or acquired MGM common stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) consequently suffered economic loss. Thus, Movant's claims are typical of those of other Class members since its claims and the claims of other Class members arise out of the same course of events.

### b. DeKalb Fulfills the Adequacy Requirement.

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. This requirement is met if "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Richardson*, 2007 WL 1129344, at *4 (citing Fed. R. Civ. P. 23(a)(4)); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). As detailed above, DeKalb is an adequate representative of the Class because it shares common questions of law and fact with the members of the Class, and its claims are typical of the claims of other Class members. As evidenced by its injuries from purchasing and/or acquiring MGM stock at prices artificially inflated by Defendants' materially false and misleading statements, Movant's interests are aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the Class.

Further, DeKalb has already taken significant steps demonstrating that it has protected, and will protect, the interests of the Class: it has executed a certification detailing its Class

Period transactions and expressing its willingness to serve as Lead Plaintiff; it has moved this Court to be appointed as Lead Plaintiff; and it has retained competent and experienced counsel who, as shown below, will be able to prosecute this complex litigation in a professional manner. *See generally Lax*, 1997 WL 461036, at *5-7. Furthermore, DeKalb has the largest known financial interest which gives it "an incentive to prosecute the case vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004). Thus, Movant, in addition to having the largest financial interest, also *prima facie* satisfies the typicality and adequacy requirements of Rule 23 and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action.

Moreover, the legislative history of the PSLRA demonstrates that Congress intended to encourage large institutional investors, especially public pension funds, to serve as Lead Plaintiff. Courts have recognized that public pension funds such as DeKalb are particularly favored as lead plaintiffs: "The Court also notes that the members of the aptly-named Pension Fund Group are **public institutional investors**, which comports with **the PSLRA's expressed preference for such lead plaintiffs**." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005) (emphasis added); *see also Smith v. Suprema Specialties*, Inc., 206 F. Supp. 2d 627, 639 (D.N.J. 2002) (court appointed public pension fund over investment management company with larger losses because public pension fund "possesses the financial sophistication and expertise to ensure that the litigation will proceed in the best interests of the Class"). As Congress noted in the Statement of Managers of the PSLRA:

> Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. REP. NO. 104-369, at 34 (1995) (Conf. Rep.).  Similarly, the Senate Report on the PSLRA

states in pertinent part:

> The Committee believes that increasing the role of institutional
> investors in class actions will ultimately benefit the class and assist
> the courts.
>
> Institutions with large stakes in class actions have much the same
> interest as the plaintiff class generally. . . .

S. REP. NO. 104-98, at 11 (1995).  Furthermore, a public pension fund is "accustomed to acting

in the role of a fiduciary, and its experience with investing and financial matters will only benefit

the class." *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997).  As a public

pension fund, DeKalb is the prototypical lead plaintiff under the PSLRA because it has a

significant interest in seeking financial redress and will represent the interests of the Class

effectively by directing and controlling the litigation.

   Finally, appointing a single institution as lead plaintiff and a single law firm as lead

counsel will promote the efficient conduct of this litigation by reducing the complications that

accompany multiple layers of attorneys and plaintiffs.  *See generally In re Enron Corp. Sec.,*

*Derivative & Erisa*, No. MDL-1446, 2004 WL 405886, at *3 n.12 (S.D. Tex. Feb. 25, 2004).

## III.    THE COURT SHOULD APPROVE DEKALB'S CHOICE OF COUNSEL

   Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court

approval, select and retain counsel to represent the Class.  The Court should not disturb the lead

plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15

U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Movant has selected and retained Chitwood Harley Harnes

LLP ("Chitwood Harley Harnes") to serve as Lead Counsel for the Class.  Chitwood Harley

Harnes has extensive experience in prosecuting complex securities actions and is well-qualified

to represent the Class.  *See* Wilson Decl. at Ex. C.  In its home jurisdiction, the Northern District

of Georgia, Chitwood Harley Harnes has led the majority of all securities class actions.  The firm

has served as lead or co-lead counsel in many high profile class actions throughout the country,

recovering billions of dollars for investors and others harmed by corporate mismanagement, and

has forced a number of important corporate reforms.  For example, as co-lead counsel in *Bank of

America Sec. Litig.*, MDL No. 1264 (E.D. Mo.), a case presided over by the District Court for the

Eastern District of Missouri, Chitwood Harley Harnes obtained a $490 million recovery; as co-

lead counsel in *Oxford Health Plans, Inc. Sec. Litig.*, MDL No. 1222 (CLB) (S.D.N.Y.), the firm

secured a $300 million recovery in the Southern District of New York; as sole lead counsel in

*Providian Financial Corp. Sec. Litig.*, No. C-01-3952-CRB (N.D. Cal.), Chitwood Harley

Harnes obtained a $65 million recovery for the class in a case filed in the Northern District of

California; and as co-lead counsel in *Carpenters Health & Welfare Fund, et al. v. The Coca-Cola

Co., et al.*, No. 1:00-CV-2838-WBH (N.D. Ga.), Chitwood Harley Harnes secured a $137.5

million recovery in the Northern District of Georgia.[6]

Finally, DeKalb's choice of local counsel, the Las Vegas, Nevada based law firm of M

Nelson Segel, Chartered has experience dealing with securities and class actions in both the state

and federal courts.  *See* Wilson Decl. at Ex. D.  Thus, the Court may be assured that by granting

this motion, the Class will receive the highest caliber of legal representation.

---

[6] Additional significant recoveries obtained by Chitwood Harley Harnes for shareholders
include: *In re 1996 Medaphis Corp. Sec. Litig.*, Civil Action No. 1:96-CV-2088-TWT (N.D. Ga.)
($72.5 million); and *In re JDN Realty Corp. Sec. Litig.*, Civil Action No. 1:00-CV-0396-RWS
(N.D. Ga.) ($47 million).

Because there is nothing to suggest that the Movant or its counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses, this Court should appoint DeKalb as Lead Plaintiff and approve its selection of Chitwood Harley Harnes as Lead Counsel for the Class.

## **CONCLUSION**

For the foregoing reasons, Movant satisfies the requirements of the PSLRA for the appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  Movant respectfully requests that the Court: (1) consolidate for all purposes the Related Actions against Defendants; (2) appoint DeKalb as Lead Plaintiff; and (3) approve Chitwood Harley Harnes as Lead Counsel and M. Nelson Segel, Chartered as Local Counsel for the Class.

Dated:  October 19, 2009                    Respectfully submitted,

                                            M NELSON SEGEL, CHARTERED

                                            \s\ M Nelson Segel_____
                                            M NELSON SEGEL, ESQUIRE
                                            Nevada State Bar No. 0530
                                            624 South 9th Street
                                            Las Vegas, Nevada  89101
                                            Tel: (702) 385-526
                                            Fax: (702) 382-2967
                                            nelson@nelsonsegellaw.com

                                            ***Proposed Local Counsel***

**CHITWOOD HARLEY HARNES LLP**
James M. Wilson, Jr.
Robert W. Killorin
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, GA  30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476
jwilson@chitwoodlaw.com
rkillorin@chitwoodlaw.com

***Proposed Lead Counsel for DeKalb County Pension Fund***

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the "**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE DEKALB COUNTY PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL"** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Ross C. Goodman
**Goodman Law Group**
520 S Fourth Street, 2nd Floor
Las Vegas , NV 89101
ross@goodmanlawgroup.com

David C. OMara
**The OMara Law Firm, P.C.**
311 E. Liberty Street
Reno , NV 89501
david@omaralaw.net

Charles C. Diaz
**Law Office of Charles C. Diaz**
443 Marsh Avenue
Reno, NV 89509
diazlaw@sbcglobal.net

Lee A. Drizin
**Lee A. Drizin, CHTD.**
2460 Professional Court, Suite 110
Las Vegas, NV 89128
lee@leedrizin.com

*Counsel for Defendants*

Gregory L. Coburn
**Glaser, Weil, Fink, Jacobs & Shapiro, LLP**
3763 Howard Hughes Parkway, Suite 300
Las Vegas , NV 89169
lcoburn@glaserweil.com

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Jeffrey S. Abraham
Jack G. Fruchter
**Abraham Fruchter & Twersky LLP**
One Penn Plaza, Suite 2805
New York, NY 10119

Richard B. Brualdi
Sue Lee
**The Brualdi Law Firm, P.C.**
29 Broadway, 24th Floor
New York, NY 10006

Samuel H. Rudman
David A. Rosenfeld
Joseph Russello
**Coughlin Stoia Geller Rudman &**
      **Robbins LLP**
58 South Service Road, Suite 200
Melville, NY 11747

Jordan L. Lurie
Leigh A. Parker
**Weiss & Lurie**
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024

      This 19th day of October 19, 2009.

      M NELSON SEGEL, CHARTERED

      \s\ M Nelson Segel
      M Nelson Segel, Esquire
      NV Bar No. 0530
      nelson@nelsonsegellaw.com